## THE PEOPLE *vs.* THE PHŒNIX BANK.

Where, by the act of incorporation of a banking company, the legislature reserve the power of *annually* appointing one of the directors of the institution, and *an information in the nature of a quo warranto* is filed against the company for a *misuser*, an appointment of a director by the governor and senate *subsequent* to the filing of the information is not a waiver of the forfeiture. The *legislature* alone can waive such forfeiture.

INFORMATION in the nature of a *quo warranto* against the defendants for claiming to be and acting as a corporation. The information was filed March 25, 1838. The defendants *pleaded* the several acts of the legislature by which they were created and continued a corporation. They were

originally incorporated by the name of the *New-York Manufacturing Company*. *Statutes of* 1812, *p.* 509. The affairs of the company were to be managed by fifteen directors, of whom the stockholders were to choose all but one, who was to be appointed annually by the council of appointment, in behalf of the state, and was to hold his office for one year, and until another should be appointed in his stead. § 3, 5. The corporation subsequently took its present name, *Statutes of* 1817, *p.* 30, § 4; and in 1831, the charter was extended until 1854, and the company was subjected to various provisions of the revised statutes, and to the safety fund law. *Statutes of* 1831, *p.* 28.

The attorney general put in sixty-two *replications*, each of which alleged that the defendants had taken *usury* on making a loan or discount in the course of their business as bankers. The acts were alleged to have been done in the years 1836 and 1837.

On the 19th March, 1840, the defendants *rejoined*, that *on [ *432 ] the tenth day of that month, William B. Townsend was by the governor and senate nominated and appointed a *director* of the company in the place of James Campbell, whose term of office had expired; that he was commissioned, and had entered on the duties of his office. Verification, &c. The attorney general *demurred*, and the defendants *joined in demurrer*.

*S. A. Foote & Willis Hall*, (attorney general,) for the people.

*D. Lord, jun. & J. Prescott Hall*, for the defendants.

*By the Court*, BRONSON, J. No question has been made upon the sufficiency of the [replications. The case, then, comes to this: the attorney general alleges that the defendants have forfeited their corporate privileges by taking usury. The defendants answer, that a state director has since been appointed by the governor and senate; and this act, they insist, amounts to a waiver or pardon of the forfeiture. The conclusion does not follow from the premises.

No one could take advantage of the forfeiture in a collateral manner. It could only be asserted by a direct legal proceeding on the part of the government to dissolve the corporation. Notwithstanding the existing cause of forfeiture, the defendants were a corporation *de facto*, and might continue to exercise their franchise until judgment of ouster should be pronounced against them. In the mean time, it was the duty of the governor and senate, as well as all others, to treat the defendants as a legally existing corporation. The appointment of a state director was, therefore, perfectly consistent with the intention to continue this prosecution, and insist on the forfeiture.

Should it be conceded that the governor and senate had a dispensing power, it does not appear that the power has been exercised. We are not authorized to follow the suggestion of the defendants' counsel, and assume that the appointment was made for the purpose of waiving the forfeit-[ *433 ] ure. *There is no such allegation in the rejoinder; and besides, we cannot shut our eyes to the fact that there was another and a sufficient ground for the exercise of the appointing power. Indeed, if the public officers believed that the defendants had violated their charter, they had a cogent reason for making the appointment, to the end that there might be one director in the board to watch over the public interests until the forfeiture could be asserted, and the corporation dissolved in the forms prescribed by law.

Enough has been said to dispose of this case. But I must not be understood as admitting that the governor and senate, without the concurrence also of the assembly, had any dispensing power. They had no more authority to waive or pardon the forfeiture than any other public officer or body of men. Indeed, the attorney general had more power over this matter than the governor and senate united; for if he refused to prosecute, the wrong charged upon the defendants would go unpunished, and the corporation would continue to exist and enjoy its privileges in the same manner as though there had been no violation of the charter. Still, the neglect to prosecute would not amount to a pardon; it could only operate as a waiver so long as the omission continued, and would be no answer to a *quo warranto* whenever he, or his successor in office, might choose to insist on the penalty.

In England, where corporations may be created by royal charter, the king can pardon a forfeiture, by granting restitution; but he has, I think, no such power in relation to corporations created by act of parliament. *The King* v. *Amery*, 2 *T. R.* 568, 9. *Newling* v. *Francis*, 3 *id.* 189. *The King* v. *Miller*, 6 *id.* 277. So, here, where corporations are created by the legislature, that body can waive the forfeiture, by ratifying and confirming the original grant. *The People* v. *The Manhattan Company*, 9 *Wendell*, 351. But no other body of men has any such dispensing power. The franchise is granted upon condition that it shall become void in case of misuser; and although the corporation will continue to exist until the forfeiture is asserted in the forms prescribed by law, the condition [ *434 ] can *only be changed, or the penalty released, by the power which made the original grant. The legislature may, perhaps, delegate its authority to pardon the offence; but that has not been done.

The rejoinder does not show that any act has been done which is inconsistent with the assertion of the forfeiture; and if it were otherwise, the governor and senate, without the concurrence of the assembly, had no dispensing power.

Judgment for the people.